# EXHIBIT "A"

# EXHIBIT "A"

1

2  Tory M. Pankopf (SBN 7477)
   **TORY M. PANKOPF LTD.**
3  611 Sierra Rose Drive
   Reno, Nevada 89511
4  Telephone: (530) 725-8263
   Attorney for Plaintiffs,
5  BRUCE AND DEBBIE TAYLOR

6

7

8                    IN THE CIVIL DIVISION

9    OF THE THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

10              IN AND FOR THE COUNTY OF CHURCHILL

11

12  BRUCE TAYLOR, and DEBBIE J. TAYLOR,
    individuals,                          CASE NO: 36289
13
                                          DEPT. NO:  2
14                      Plaintiffs,

        v.
15

16  MORTGAGE ELECTRONIC REGISTRATION
    SYSTEMS, INC. a Delaware corporation, CTX
17  MORTGAGE COMPANY, a Delaware Limited
    Liability Company; CHASE HOME FINANCE,
18  LLC; FEDERAL NATIONAL MORTGAGE
    ASSOCIATON, a business entity, dba FANNIE
19  MAE; CAL-WESTERN RECONVEYANCE
    CORPORATION, a business entity; JOE
20  KRASOVIC, JEFFREY STARLING, MARY J.
    STRATHAM; and DOES 1 through 25, inclusive.
21
22                      Defendants.
23

24              <u>**COMPLAINT**</u>

25  Plaintiffs, BRUCE TAYLOR, and DEBBIE TAYLOR, by and through their attorney of

26  record, hereby complains and alleges against defendants MORTGAGE ELECTRONIC

27  REGISTRATION SYSTEMS, INC. a corporation, CTX MORTGAGE COMPANY, a

28

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 1 -
COMPLAINT

Delaware Limited Liability Company; CHASE HOME FINANCE, LLC; FEDERAL NATIONAL MORTGAGE ASSOCIATON, dba FANNIE MAE; CAL-WESTERN RECONVEYANCE CORPORATION; JOE KRASOVIC, JEFFREY STARLING, MARY J. STRATHAM; and DOES 1 through 10, inclusive (collectively "Defendants") as follows:

## THE PARTIES

A. Plaintiffs, BRUCE TAYLOR, and DEBBIE TAYLOR, are residents of Churchill County ("Plaintiffs").

B. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), is the beneficiary of the deed of trust recorded in the County of Churchill, Nevada, against the Plaintiffs' residence located and commonly described as 3060 York Lane, Fallon, NV, 89406 (hereinafter, the "Property").

C. Defendant, CTX MORTGAGE COMPANY, a Delaware Limited Liability Company ("CTX"), is the alleged original payee on the promissory note allegedly secured by the deed of trust which MERS is the beneficiary.

D. Defendant, CHASE HOME FINANCE, LLC ("Chase"), is the alleged transferee of the note from CTX as payee on the promissory note allegedly secured by the deed of trust which MERS is the beneficiary.

E. Defendant, CAL-WESTERN RECONVEYANCE CORPORATION ("Cal-Western"), is the alleged assignee trustee to the deed of trust that allegedly secures the subject Property.

F. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATON, dba FANNIE MAE ("Fannie Mae"), is the alleged transferee of the note from Chase as payee on the promissory note allegedly secured by the deed of trust which MERS is the beneficiary.

G. Defendant, JOE KRASOVIC ("Krasovic"), an individual, is both the assistant secretary to MERS and the assistant vice president of Chase who executed the assignments of the note and deed of trust November 5, 2008, and, again, on August 17, 2010.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 2 -
COMPLAINT

H. Defendant, JEFFREY STARLING ("Starling"), the California Notary Public, commission number 1858755, who notarized the August 17, 2010, assignment of note and deed of trust.

I. Defendant, MARY J. STRATHAM ("Stratham"), the California Notary Public, commission number 1646046, who notarized the November 5, 2008, assignment of note and deed of trust.

I. At all relevant times mentioned here, Defendant and DOES I through 15, were the agent, employee, and/or co-conspirator of each of the remaining defendants, and in doing the things alleged here, were acting in the course and scope of that agency employment and/or conspiracy and with the consent of each of their co-defendants.

J. Plaintiffs are ignorant of the true names and capacities of defendants sued hereunder as DOES I through 25, inclusive, and therefore sues such defendants by fictitious names. Plaintiffs will amend this complaint to identify any defendants by their true names and capacities when and if Plaintiffs have ascertained them. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named defendants is tortiously or otherwise legally responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages were proximately caused thereby.

### SUMMARY OF COMPLAINT

1.      Plaintiffs, in good faith, had been actively participating in re-modification of their loan on their residence with Chase. Plaintiffs had been timely paying their note consistent with the terms of the re-modification. On August 17, 2010, unbeknownst to Plaintiffs, Chase assigned its alleged interest in the note to Fannie Mae. On September 9, 2010, Fannie Mae foreclosed on their Property. On September 29, 2010, Fannie Mae served Plaintiffs with a 3-Day Notice to Quit/Vacate their residence. Neither Chase nor Fannie Mae gave any reason why it foreclosed on the Property while the Plaintiffs were in good standing with the agreed modification. This

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 3 -
COMPLAINT

conduct is, but is not limited to, bad faith and breach of the covenant of good faith and fair dealing.

2.    Defendants did not have the right under Nevada's non-judicial foreclosure statute to foreclose on the Plaintiffs' Property because the deed of trust securing it was severed from the loan at the inception of the loan. No rights under the note of any kind were assigned to MERS at the inception of the loan when it was named as the beneficiary. Because MERS had no rights under the note, the deed of trust was severed from the note. MERS and its alleged assignees were forever barred from utilizing Nevada's non-judicial foreclosure statutes to take title to Plaintiffs' Property.   Thus, the foreclosure was and is wrongful.

3.    Plaintiffs will establish that they are the victims of a predatory lending scheme perpetuated by the Defendants, whose conduct will show that they have suffered same actual or threatened injury as a result of the Defendants' conduct, that the injury can be traced to the challenged action, and that it is likely to be redressed by a favorable decision.[1]

## GENERAL ALLEGATIONS

4.    It is a combination of intentional acts or a reckless disregard to the consequences of the co-conspirators for using "form documents" (boilerplate) including but not limited to: (1) The Note including a waiver by borrowers right to "Presentment and Notice of Dishonor" which precludes not only the borrower, but anyone from finding the true holder of the Note; (2) Utilization of a "form" (boilerplate) Deed of Trust creating a "straw-man" as a "nominee" claiming in the document to be also named beneficiary, but in reality is a separate company commonly known as MERS, who represents to its members that it is not a beneficiary. (3) Defendant Lenders utilizing techniques that allow unqualified borrowers to be qualified buyers. In essence, lenders represent that the borrower need only look towards paying the low initial

---

[1] *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 US, 464, 472 (1982).

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 4 -
COMPLAINT

payment yet fails to review the contingencies of the home should it not increase in value. The lenders assure the borrower that they will be able to refinance.  This coupled with the fact that Lenders do not require any documentation as to income, (i.e. no doc loans; nor is there any down payment required in some instances as criticized by the Nevada Legislature).[2]

5.    Plaintiffs will establish that they had been engaged in an ongoing modification of their loan with Chase and had been making timely payments pursuant to the new terms over a period of time.  On August 17, 2010, without notice and despite Plaintiffs having been engaged in the modification and not in default, Chase, via Cal-Western, allegedly assigned its alleged interest in the note and deed of trust to Fannie Mae and sold their Property at a foreclosure sale. Presently, Fannie Mae is attempting to evict Plaintiffs from their Property via the state's unlawful detainer procedures.

6.    Plaintiffs have embarked upon a unique challenge to all participants in the lending and related services. Plaintiffs initially points out:

"...The Court should consider what has recently emerged as a cause of action to Defendants now called "PREDATORY LENDERS".

The best definition that I have found is as follows:

Predatory lending as a syndrome of abusive loan terms or practices that involve one or more of the following five problems:

_____

[2] As of 2007 the Nevada Legislature has amended NRS 598D.100(1), which clearly demonstrates that this conduct will no longer be tolerated. as indicated by the amended statute: It is unfair lending practice for a lender to: (b) Knowingly or intentionally make a home loan, other than a reverse mortgage, to a borrower, including, without limitation, a low-document home loan, no document home loan or stated-document home loan, without determining, using any commercially reasonable mean or mechanism, that the borrower has the ability to repay the home loan, 2. (b): Low-document home loan' means a home loan: (1) Whose terms allow a borrower to establish his ability to repay the home loan by providing only limited verification of his income and other assets or (2) Which is evidenced only by a deed transferring some or all of the interest of the borrower in the home property to the creditor, (c) no-document home loan' means a home loan whose terms allow a borrower to establish his ability to repay the home loan without providing any verification of his income and other assets. ] 2007 version.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 5 -
COMPLAINT

(1) loans structured to result in seriously disproportionate net harm to borrowers;
(2) harmful rent seeking;
(3) loans involving fraud or deceptive practices;
(4) other forms of lack of transparency in loans that are not actionable as fraud; and
(5) loans that require borrowers to waive meaningful legal redress...."

Most, if not all predatory loans combine two or more of these problems. Similarly, some abusive terms or practices fall into more than one category. Rather than serving as a proposed statutory definition, this definition of predatory loans is intended as a diagnostic tool for identifying problematic loan practices that require redress...."

7.     Most, if not all, predatory loans combine two or more of these problems. Similarly, some abusive terms or practices fall into more than one category. Rather than serving as a proposed statutory definition, this definition of predatory loans is intended as a diagnostic tool for Identifying problematic loan practices that require redress.

8.     In the overwhelming percentage of cases, predatory loans are a subset of sub-prime loans, which are loans with higher interest rates that are designed for borrowers with impaired credit or who do not otherwise qualify for loans in the conventional prime market. Defendants provided the classic lure by giving first loan and then a second loan (same date) but does not address the payment of the second as a loan, but look only as an equity loan; yet all funds are used in total to purchase the home that results in a Deed of Trust being recorded as a security interest, creating the false ratio of income to payment.

9.     In a proper foreclosure both the Note and the Deed of Trust must be assigned. As noted above, a mortgage loan consists of a Promissory Note and a security instrument typically a mortgage or a Deed of Trust. When the Note is split from the Deed of Trust "the Note becomes, as a practical matter, unsecured." [See: Restatement (Third) of Property (Mortgages) § 5.4 cmt.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 6 -
COMPLAINT

a (1997)]. See also[3] A person holding only a Note lacks the power to foreclose because It lacks the security, and a person holding only a Deed of Trust suffers no default because only the holder of the Note is entitled to payment on it. [See Restatement (Third) of Property (Mortgages) § 5.4 cmt e (1997)], "Where the mortgagee has 'transferred'[4] only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation has a worthless piece of paper."[5]

10.    In 1872, the principle was established and is still in effect today as noted in Carpenter v. Longan,  83 U.S. 271, 1872, indicating:

> "....The note and mortgage are inseparable; the former as essential, the latter as an incident, An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity....
> ....The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents...."

11.    Just like the mortgage loan at issue in this matter, a host of dubiously underwritten mortgage loans helped inflate a bubble in residential real estate values.[6]

12.    One particular company that has been a party in more sub-prime mortgage loans than any other is Mortgage Electronic Registration Systems, Inc., commonly known as "MERS".

---

[3] Missouri Court of Appeals, Robert BELLISTRI v. OCWEN LOAN SERVICING, 284 S.W.3d 619 (2009) states in part that "....Typically the same person holds both the Note and the Dead of Trust. In the event they are split, the Note as a practical matter becomes unsecured."  And further goes on to state that "The practical effect of splitting the Deed of Trust from the Promissory Note is to make it impossible for the holder of the Note to foreclose...."
[4] Under N.R.S. § 104.9012, Nevada's Article 9, an "instrument" is defined as a negotiable instrument, "or any other writing that evidences a right to the payment of a monetary obligation ....and is of a type that in the ordinary course of business is transferred by delivery with any necessary endorsement or assignment." "Instruments" are thus defined somewhat broadly according to ordinary business practices.
[5] 4 Richard R. Powell, Powell on Real Property, § 37.27[2] (2000).
[6] See Kareem Fahim & Janet Roberts, Foreclosures, With No End in Sight, N.Y. TIMES, May 17, 2009, at NJ 1. As it has become clear that millions of Americans are not capable of repaying loans crafted for them by commission hungry brokers, the liquidity of securities drawn from those loans were then frozen. See Joshua Soak, IMF Puts Subprime Loss Near $1 Trillion.  Economic Damage Equals $143 for Every Person on the Planet, CHI. TRIB., April 8, 2008, C1.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

MERS is a corporation registered in Delaware and headquartered in the Virginia suburbs of Washington, D.C.[7]

13.     The courts are now stepping to the plate and addressing the abuses of the conduct of the named Defendants herein, and others. As noted in United States Bankruptcy Court, D. Nevada, In re Lonnie & Lisa HAWKINS, Debtor(s). No. BK-S-07-13593-LBR, March 31, 2009[8]:

> "....Under Nevada law a negotiable promissory note is enforceable by: (1) the holder of the note, or (2) a non-.holder in possession of the note who has the rights of a holder. Thus if MERS is not the holder of the note, then to enforce it MERS must be a transferee in possession who is entitled to the rights of a holder or have authority under state law to act for the holder. Simply being a beneficiary or having an assignment of a deed of trust is not enough to be entitled to foreclose on a deed of trust for there to be a valid assignment for purposes of foreclosure both the note and the deed of trust must be assigned. A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." Restatement (Third) of Property (Mortgages) § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. See Restatement (Third) of Property (Mortgages) § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no Interest In the underlying debt or obligation, has a worthless piece of paper." 4 Richard R. Powell, Powell on Real Property, § 37.27(2] (2000)...." [9]

14.     In Landmark Nat'l Bank vs. Kesler, 216 P.3d 158, 167 (Kan 2009), the Supreme Court of Kansas held:

---

[7] See Carson Mullen, MERS: Tracking Loans Electronically, MORTGAGE BANKING, May 31, 2000.
[8] Affirmed on appeal.
[9] Nevada recognizes that parties may secure the performance of an obligation or the payment of a debt by means of a deed of trust. N.R.S. § 107.020. The maker of the note is the trustor and the payee is the beneficiary. Given this, it is troubling that MERS apparently believes that in states such as Nevada possession of the note is not required if no deficiency is sought. Hultman says this in his declaration. Despite MERS' contention that the mere status as a beneficiary or nominee of a beneficiary is sufficient, MERS has tried to withdraw most of its motions because it could not ascertain that its Member had possession of the note when the motion was filed.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 8 -
COMPLAINT

"....The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted]. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623 (Mo. App. 2009).

The Bellistri Court found:

"... that, because MERS was not the original holder of the Promissory Note and because the record contained no evidence that the original holder of the Note authorized MERS to transfer the Note, the language of the assignment purporting to transfer the Promissory Note was ineffective. "MERS never held the Promissory Note, thus its assignment of the Deed of Trust to Ocwen separate from the Note had no force." Bellistri, 284 S.W.3d at 624; see also In re Wilhelm, 407 B.R 392 (Bankr. D. Idaho 2009) (standard mortgage Note language does not expressly or implicitly authorize MERS to transfer the Note); In re Vargas, 396 B.R. 511, 517 (Bankr C.D. Cal. 2008) ("[I]f FHM has transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal. MERS presents no evidence as to who owns the Note, or of any authorization to act on behalf of the present owner."); Saxon Mortgage Services, Inc. v. Hillery, 2008 WL 5170180 (ND. Cal. 2008) (unpublished opinion) ("For there to be a valid assignment, there must be more than just assignment of the Deed of Trust alone; the Note must also be assigned.... MERS purportedly assigned both the Deed of Trust and the Promissory Note.... However, there is no evidence of record that establishes that MERS either held the Promissory Note or was given the authority.... to assign the Note").....

15.    When the Borrower cannot pay the payments agreed in the "Note", the beneficiary would require the named trustee to notice the obligor of the default and intent to sell under Nevada Law. However, present in the case at bar Plaintiffs, and similar to challenges in other cases, argue that MERS does not have standing merely because it is a self-appointed beneficiary under the Deed of Trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a Deed of Trust is insufficient to enforce the obligation. As noted in the

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 9 -
COMPLAINT

causes of action noted herein, the Deed of Trust attempts to name MERS as both a beneficiary and a nominee. The document first says:

> "MERS is a separate corporation that is acting solely as a nominee for Lender and Lenders successors and assigns. MERS is the beneficiary under this Security Instrument."

And later it says:

> "The beneficiary of this Security instrument is MERS (solely as nominee for Lender and Lenders successors and assigns) and the successors and assigns of MERS."

Yet as noted above:

> "MERS Terms and Conditions: MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to 'mortgage(s)' and 'mortgagee of record' shall include deed(s) of trust and any other form of security instrument under applicable State law."

16.    The fraud supported by the facts alleged herein is established by the fact that there is no showing that MERS has authority to foreclose on the subject property. MERS must establish there has been a sufficient transfer of both the Note and Deed of Trust, or that MERS has authority under State law to act for the Note's holder.[10] MERS cannot do either.

17.    The non-judicial foreclosure law in Nevada under Chapter 107 sets forth the specific standards regarding who can commence and advance a non-Judicial foreclosure. Additionally,

---

[10] See Restatement (Third) of Property (Mortgages) § 5.4 cmt. c (1997). See also In Re Verges, 396 B.R. 511, 516-17 (Barkr.C.D.Calif.2008); See also NRS 247.200 stating "A document affecting reel property must be recorded in the office of the county recorder of the county in which the real property is situated."

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 10 -
COMPLAINT

the standard is set regarding substitution of Trustees. NRS 107.030 create covenants that may be utilized. This permissive language, however allows other covenants to be used by the parties, but creates the base line for establishing notice to the borrower, Defendants are bound by the minimum requirements namely:

"...Covenant No. 9. That the beneficiary or his assigns may, from time to time, appoint another trustee, or trustees, to execute the trust created by the deed of trust or other conveyance in trust. A copy of a resolution of the board of directors of beneficiary (if beneficiary be a corporation), certified by the secretary thereof, under its corporate seal, or an instrument executed and acknowledged by the beneficiary (If the beneficiary be a natural person), shall be conclusive proof of the proper appointment of such substituted trustee. Upon the recording of such certified copy or executed and acknowledged instrument, the new trustee or trustees shall be vested with all the title, interest, powers, duties and trusts in the premises vested in or conferred upon the original trustee. If there be more than one trustee, either may act alone and execute the trusts upon the request of the beneficiary, and all his acts there under shall be deemed to be the acts of all trustees, and the recital in any conveyance executed by such sole trustee of such request shall be conclusive evidence thereof, and of the authority of such sole trustee to act."

18.    Plaintiffs have located no such recording, and thus has challenged not only the validity of the Deed of Trust upon which Cal-Western, LLC is attempting to utilize for non-judicial foreclosure, but also the acts of the claimed "substitute trustees," Recording notices.

19.    Therefore any foreclosure to be initiated by Cal-Western, or against the Plaintiffs by parties with no standing to commence any foreclosure proceeding and who were not involved in the loan transactions and which parties were and are unknown to the Plaintiffs and, moreover, did not fund the Plaintiffs loan; or acquired ownership of the note cannot establish the right to Plaintiffs' Property or monies.[11] Cal-Western claims to be agent for the "current beneficiary"

---

[11] "In *Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163 (36 Cir. 1988), the Plaintiffs executed promissory notes which, after a series of transfers, came Into the defendant's possession. At issue was whether the defendant was the rightful owner of the notes. The court held that the defendant was nor entitled to holder in due course status because the endorsements failed to meet the UCC's fixation requirement. Id. at 168-69. The court relied on UCC section 3-

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

1

2    without establishing of record any such assignment or designation required by the minimum

3    standards set forth in covenant Number 9.  Stewart Title of Nevada, requested the recording of

4    "notice of default," without making any inquiry as to whether the parties executing the same

5    complied with the recording statute substituting trustees (noted above), or any other authority to

6    act.  Stewart Title's action(s) were negligent.

7    20.    Defendants lured the Plaintiffs, and other similarly situated borrowers, by being able to

8    guarantee them, "the American dream of owning their own home."  The initial lender and

9    subsequent assignees acquiesced in establishing the borrower's qualifications to obtain the

10   initial and subsequent loans based upon non-traditional lending standards. Defendants utilized

11   "stated" or "non-document income" methods which do not examine borrowers' actual income in

12   order to qualify borrower. Lenders convinced borrowers to get two loans, and assured

13   borrowers that when the second became due Plaintiffs would be able to refinance.

14   21.    The lenders and investors in mortgage-backed securities, including some of the

15   Defendants, have sought and received bail out money from the United States Government.[12]

16   22.    The lenders and investors in mortgage backed securities, including some of the

17   Defendants, have used those funds to repay investors who funded the loans of the Plaintiffs,

18   thus having no liability for the Notes and no right to collect on the Notes and no right to initiate

19   foreclosures on the Plaintiffs' home.

20   23.    In this case, MERS is named in the DOT as a beneficiary, solely as the "nominee" of

21   CTX holding only "legal title to the interests granted to CTX under the DOT. A number of

22   cases have held that such language confers no economic benefit on MERS. See, e.g., In re

23

24

25

26   202(2) [A.R.S. 47-3204]: "An endorsement must be written by or on behalf of the holder and on the instrument or
     on a paper so firmly affixed thereto as to become a part thereof." Id. at 165. Since the endorsement page, indicating

27   that the defendant was the holder of the note, was not attached to the note, the court found that the note had not been
     properly negotiated. Id. at 166-67. Thus, ownership of the note never transferred to the defendant.

28   [12] Troubled Asset Relief Program [TARP]; Term asset-backed Securities Loan Facility [TALF].

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 12 -
COMPLAINT

Sheridan, 2009 WL 631355, *4 (Bankr.D. Idaho 2009); In re Mitchell, 2009 WL 1044368, *3-4 (Bankr.D. Nev. 2009); In re Jacobson, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009). As noted by the Sheridan court, MERS "collect[s] no money from [d]ebtors under the [n]ote, nor will It realize the value of the [p]roperty through foreclosure of the [d]eed of [t]rust in the event the [n]ote is not paid." 2009 WL 631355 at *4.

24.     Chase and CTX, appear to claim the "servicer" status, but their acts are limited and they have acted in capacities not authorized. At this time the true owner(s) of the note are unknown at this time. The complaint will be amended to include them as defendants when their identities are ascertained.

25.     Securitization of residential mortgages is "the process of aggregating a large number of notes secured by deeds of trust in what is called a mortgage pool, and then selling security interests in that pool of mortgages." Kurt Eggert, Held Up in Due Course: Predatory Lending, Securitization, and the Holder in Due Course Doctrine, 35 CREIGHTON L. REV., 503, 536 (2002). The process begins with a borrower negotiating with a mortgage broker for the terms of the loan. Then, the mortgage broker either originates the loan in its own name or in the name of another entity, which presumably provides the money for the loan. Almost immediately, the broker transfers the loan to the funding entity. 'This lender quickly sells the loan to a different financial entity, which pools the loan together with a host of other loans in a mortgage pool." Id. at 538. The assignee then transfers the mortgages in the pool to another entity, which in turn transfers the loans to a special purpose vehicle ("SPV") whose sole role is to hold the pool of mortgages. Id. at 539. "The transfer to the special purpose trust must constitute a true sale, so that the party transferring the assets reduces its potential liability on the loans and exchanges the fairly illiquid loans for much more liquid cash." Id. at 542. Next, the SPV issues securities which the assignee sells to investors. Id. at 539. Once the securities have been sold, the SPV is not actively involved. It "does not directly collect payments from the homeowners whose notes and deeds of trust are held by the SPV." Id. at 544. Rather, servicers collect the principal and

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV  89511
(530) 725-8263

- 13 -
COMPLAINT

1

2    interest payments on behalf of the SPV. Id. Fees are associated with the servicing of loans in

3    the pool.[13] It is one position of Plaintiffs', but not limited to, that once the note is sold or

4    assigned, and there was a failure to also assign the deed of trust (attempting to make MERS a

5    perpetual beneficiary, when they are not) destroys the Deed of Trust, and the ability to process a

6    non-Judicial foreclosure.

7    26.      This case arises because the Plaintiffs are victims of unlawful predatory lending

8    practices and are victims of wrongful foreclosure practices.  The foreclosure was based upon a

9    Deed of Trust and Note that was no longer held by the same entity or party authorized to

10   effectuate foreclosure proceedings. The Deed of Trust that was flawed at the loan origination

11   because MERS or a loan company of MERS was named as the beneficiary or nominee of the

12   lender on the Deed of Trust.  Further, Defendants violated various State laws, including and not

13   limited to, the Unfair Lending Practices Act as set forth In NRS § 598D.  Defendant, CTX,

14   Chase and Fannie Mae also breached the implied duty of good faith and fair dealing, i.e., the

15   duty to refrain from frustrating the purpose of the lending contract. This duty attends every

16   contract in Nevada[14] and includes their wrongful foreclosure practices.[15] The Defendants, have

17

18

19

20   [13] See "IN RE WEISBAND: In re: BARRY WEISRAND, Chapter 13, Debtor, Case No. 4:O9-bk-05175- EWH.
21   United States Bankruptcy Court, D Arizona, March 29, 2010.
     [14] This duty attends every contract in Nevada. In Hilton Hotels v Ruth Lewis Productions, 107 Nev. 226, 232-33,
22   808 P.2d 919 (1991), the Nevada Supreme Court wrote:
             Where the terms of a contract are literally complied with but one party to the contract
23         deliberately contravenes the intention and spirit of the contract, that party can incur liability for
           breach of the implied covenant of good faith and fair dealing. This court recognized such an
24         action in A.C. Shaw Construction v. Washoe County, 105 Nev. 913, 784 P.2d 9 (1989), in
           which contract damages were held to be recoverable for breach of the implied covenant of
25         good faith and fair dealing.
     See also Frantz v. Johnson, 116 Nev. 455, 465 n.4, 999 P.2d 351 (2000) ('An implied covenant of good faith and
26   fair dealing exists in every Nevada contract and essentially forbids unfair acts by one party that disadvantage the
     other." Citations omitted)
27   [15] Nevada Revised Statute (NRS) 205.372 requires full disclosure of all material facts attendant to a mortgage
     lending transaction.
28         1. A person, who, with the intent to defraud a participant in a mortgage lending transaction:

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 14 -
COMPLAINT

foreclosed when they did not have a lawful right to foreclose. The original Trustees Timothy M. Bartosh and William B. Naryka participated in the deed of trust utilizing MERS and became part of the wrongful scheme, and never relinquished their status as Trustees or were never properly substituted out.

27.     Additionally. Defendants knowingly or intentionally made a home loan to Plaintiffs based solely upon the equity expectations of the home without determining whether the borrower has the ability to repay the home loan from other assets, including, without limitation, income. [16]

28.     This Court has Jurisdiction and venue over this action in that the parcel of real property at issue is located in Churchill County, State of Nevada. The Defendants transacted business in Churchill County; and the individual Defendants named herein are residents of the State of Nevada and perpetuated the challenged conduct as representatives of Defendants.  The Subject property being described as:

3060 York Lane, Fallon, NV 89406

---

[16] NRS 598D.100 (2003 version) 1. It Is an unfair lending practice for a lender to:
(a) Require a borrower, as a condition of obtaining or maintaining a home loan secured by home property, to provide property insurance on improvement to home property in an amount that exceeds the reasonable replacement value of the improvements.
(b) Knowingly or intentionally make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including without limitation income.
(c) Finance a repayment fee or penalty in connection with the refinancing by the original borrower of a home loan owned by the lender or an affiliate of the lender.

(A) Knowingly makes a false statement or misrepresentation concerning a material fact or deliberately conceals or tells to disclose a material fact;

- 15 -<br>COMPLAINT

The land referred to herein is situated it, the State of Nevada, County of Churchill:

**LOT 25 AND THE WEST 5' OF LOT 26 OF THE MARVEL VISTA ACRES SUBDIVISION, ACCORDING TO THE MAP THEREOF ON FILE IN THE OFFICE OF THE COUNTY RECORDER OF CHURCHILL COUNTY, NEVADA, AS FILE NO. 88143**

P.I.N: 10-101-03

29.   Defendant CTX was the original lender involved in the above described property.

30.   Timothy M. Bartosh and William B. Naryka were the original trustees involved in the above described Property for an initial loan that were predatory in nature, when granted, as more particularly described in the specific cause of action.

31.   MERS is believed to be a Delaware corporation which was, and is, integrally involved in a system which shares information among lending corporations. This Defendant is believed to have acted in concert with all other Defendants and the other Defendants herein named or to be named, so as to engage in predatory and unfair lending practices including without limitation the intentional transfer of rights as purported beneficiary under void Deeds of Trust for the purpose and with the intent of facilitating wrongful and unlawful foreclosures on the Plaintiffs herein and millions of other homeowners in the United States; to have used persons with good credit and substantial down payments, such as Plaintiffs, to prop up a scheme to generate bonuses and corporate profits — at the expense of the national real estate market; and to have otherwise conspired to harm Plaintiffs.

32.   The initial servicer involved in the above described Property for the initial loan that was predatory in nature, when granted, is unknown at this time.  The servicer's action are more particularly described in the specific cause of action.

33.   Cal-Western claims to be the duly appointed Substituted Trustee or acting as Agent for the Trustee or Beneficiary; and Western Nevada Title Company requested the recording of the

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 16 -
COMPLAINT

notice of default and the alleged deeds of trust, and is representing that it is agent for Cal-Western as agent for Chase, Fannie Mae, and MERS. Cal-Western is the entity Plaintiffs were informed to contact to arrange payments to stop the foreclosure, and is believed to hold some interest in the Property, note or deed of trust but Plaintiffs have located no recording documents establishing their standing.[17]

34.    Doe Defendants 1-25 are corporations, persons, associations, partnerships or other entities, the identities of which are unknown to Plaintiffs. Plaintiffs believe Does 1-25 Defendants are in some way responsible for the damages they have sustained. When Plaintiffs ascertain the identities of these Doe Defendants, they may seek leave of this Court to amend this Complaint, so as to hold Doe Defendants legally responsible.

## FACTS

35.    Plaintiffs hereby incorporates the allegations of paragraphs 1 through 34, inclusive, as well as all other paragraphs herein, as though the same were fully stated.

36.    Plaintiffs executed a note payable to CTX. It is believed, that the note was immediately sold or transferred, yet, the deed of trust, naming MERS as beneficiary, was never assigned, and, if the deed of trust was not already void, became void upon transfer, sell, or assignment of the note. Plaintiffs were assured that when any difficulty arose he would be able to refinance the property because of the increased value of the equity that would be "growing". To this day, Plaintiffs were never given access to the true holder of the note to negotiate a refinancing. The "boilerplate" Note, provided by Defendants, including among other things a waiver of Presentment and Notice of Dishonor which would prevent Plaintiffs from being able to determine who holds the Note. Though at the inception of the loans, the lender and participants

[17] NRS 247.200 requires all Instruments effecting real property be recorded.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 17 -
COMPLAINT

in closing the loans have promised and guaranteed that Plaintiffs could refinance and/or modify the loan before any increase in payment would be in effect Plaintiffs made several attempts to modify his loan but was not given direct contact with the holder of the Note, but dealt with believed servicers.

37.    Plaintiffs received a "Notice of Default" executed by Cal-Western as agent for Chase and as agent for the current beneficiary, recorded by Stewart Title.

38.    Unknown to Plaintiffs however, was the fact the all the defendants noted above; were utilizing guidelines in the "intake" information and/or underwriting department that would qualify Plaintiffs for a Home Purchase Loan, but said evaluation was contrary to those set forth in the Unfair Lending Practice Act under NRS § 598D.100 et. seq. (2003).

39.    Defendants, their successors, assignees, or representatives acted in concert with the individual named Defendants herein secured, acquired and/or ratified the contract while luring unwary borrowers into "subprime mortgages, i.e. loans with high interest rates and excessive costs. Said Successors or assigns, knowing the liability associated with acquiring assets of the various Lenders involved herein and knowing that the predecessors made these loans available to unqualified borrowers while knowing many of the loans would result in foreclosure, in derogation of the implied duty of good faith and fair dealing owed to Plaintiffs. Successor holders or assigns still acquired the assets of the predecessor lenders knowing said predecessors engaged in myriad forms of misconduct before and after execution of the subject contract for example, the lender: CTX had many mortgage products available — many of which were attended by a high probability of foreclosure and therefore a probability of eroding and then collapsing real estate values in Nevada.

40.    CTX, in concert with the other named Defendants herein maintained policies and practices of pressuring and/or steering customers into subprime mortgages, and other inherently defective arrangements, which were likely to result in foreclosure, but which generated high profits on a short-term basis. Subprime loans were significantly more profitable than prime

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 18 -
COMPLAINT

1
2   loans. CTX pressured and induced its brokers and agents, including defendant loan broker, to
3   direct Plaintiffs into subprime loans, even though Plaintiffs, and others, were qualified for loans
4   on more favorable terms, i.e., prime loans which were less likely to result in foreclosure.
5   41.    Defendants and their brokers and agents issued subprime mortgages to borrowers who
6   were incapable of paying the mortgages throughout the life of the loan, and who were known to
7   be incapable, e.g., persons with poor credits scores and possessed of inadequate income and
8   resources. CTX and their brokers and agents aggravated these practices by designing subprime
9   loans attended by numerous fees and penalties, which produced significant revenue for
10  Defendants but which increased the risk of default and foreclosure.
11  42.    The Defendants named herein, set up a scheme whereby they or their successors in
12  interest reaped inordinately large profits pursuant to predatory lending schemes. To the
13  contrary, Defendants' borrowers, especially prime borrowers, would bear the brunt of risks
14  which would materialize, Said Defendants did not disclose to Plaintiffs, or other borrowers,
15  these risks which could, and probably would, far exceed those attendant to normal market
16  fluctuations. As a predicate to entering into the mortgage contract Defendants and those they
17  acted in concert with, required Plaintiffs to make detailed financial disclosures, including
18  disclosures regarding Plaintiffs' assets and income. Plaintiffs made these disclosures.
19  Defendants thereby acquired detailed knowledge of Plaintiffs financial vulnerability to the
20  Defendants' predatory lending practices and/or unethical and unsound business practices.
21  Plaintiffs, while further extending their exposure to such effects via a substantial down
22  payment, relied upon Defendants to advise and act in a reasonable, ethical and lawful manner,
23  e.g., to honor the mutuality of obligation which was the essence of the mortgage contract and to
24  disclose all material facts.
25  43.    Defendants were possessed of a duty to disclose all material facts and knew, and should
26  have known, Plaintiffs was relying on Defendants to do so in a complete and forthright manner.
27
28

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(630) 725-8263

- 19 -
COMPLAINT

This duty existed as of the time of execution of the subject contract with Defendants, and continues to exist.  This duty is codified by NRS § 205.372.[18]

44.     Defendants and their brokers and agents engineered many of its loan products so as to necessitate refinancing. That is, borrowers would be faced with substantial increases in payments, or in the alternative, would be forced to refinance. Defendants and their brokers and agents knew if real estate values declined, refinancing would not be available to many borrowers, who had been assured refinancing would be an easy way to resolve problems.

45.     Defendants and their brokers and agents failed to implement quality assurance standards in reviewing brokers' actions and documents. Defendants intentionally allowed numerous loans to be approved, despite fraudulent or inadequate documentation. Defendants profited from these "Scratch and Dent" loans by collecting interest-only payments and penalty fee regarding loans which were attended by little or no chance of reaching maturity.

---

[18] 1. A person who, with the intent to defraud a participant in a mortgage lending transaction: (a) Knowingly makes a false statement or misrepresentation concerning a material fact or deliberately conceals or fails to disclose a material fact;
(b) Knowingly uses or facilitates the use of a false statement or misrepresentation made by another person concerning a material fact or deliberately uses or facilitates the use of another person's concealment or failure to disclose a material fact;
(c) Receives any proceeds or any other money In connection with a mortgage lending transaction that the person knows resulted from a violation of paragraph (a) or (b);
(d) Conspires with another person to violate any of the provisions of paragraph (a), (b) or (c);
(e) Flies or causes to be filed with a county recorder any document that the person knows to include a misstatement, misrepresentation, or omission concerning a material fact, commits the offense of mortgage lending fraud which is a category C felony and, upon conviction, shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term or not more than 10 years, or by a fine of not more than $10,000, or by both tine and imprisonment.
2. A person who engages in a pattern of mortgage lending fraud or conspires or attempts to engage in a pattern of mortgage lending fraud is guilty of a category B felony and, upon conviction, shall be punished by imprisonment in the state prison for a minimum term of not less than 3 years and a maximum term of not more than 20 years, or by a fine of not more than $50,000, or by both fine and imprisonment,...." The amended statute became effective on July 1, 2009 for all other purposes. And was approved by the Governor May 29, 2009.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

46.     Defendants engaged in lending practices which Defendants knew would frustrate borrowers' purposes of executing mortgages. Defendants convinced persons to execute mortgages which were attended by adjustable rates and/or balloon payments which Defendants knew, and should have known, the mortgagors would be unable to pay.

47.     Defendants engaged in fraud and/or deliberate carelessness in the loan qualification process in order to artificially create commissions and profits via authorization of loans which should not have been made. Defendants and their brokers and agents had economists and/or financial advisors who informed Defendants that their Predatory, unethical and/or unsound business practices were attended by huge risks, i.e., the risk of severe damage to the real estate market. Defendants proceeded intentionally, or in the alternative with reckless disregard and/or negligence; with predatory, illegal, unethical and unsound business practices — in order to continue profiting at the expense of borrowers. The details of Defendants' predatory, unethical, illegal and/or unsound lending practices are peculiarly within the Defendants' knowledge and will be adduced during discovery.

48.     The executives and employees of Defendants have relied on the principle & sanctity of contract in support of their right to receive huge bonuses and/or grossly inflated salaries. The same principles provide a legal basis for this lawsuit and standing for Plaintiffs to proceed against Defendants.  Defendants and their brokers and agents are estopped from denying the sanctity of the subject mortgage contracts, including the viability of the implied duty of good faith and fair dealing.

49.     Defendants and their brokers and agents, directors and officers derived significant personal benefits from illegal activities, Massive bonuses were paid to Defendants executives and employees in part from monies paid to Defendants and their brokers and agents by Plaintiffs. These bonuses constituted a form of unjust enrichment.

50.     Defendants Cal-Western, Stewart Title, First American National Default Title, Timothy M. Bartosh, William B. Naryka, and their brokers and agents officers, directors and senior

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

managers, who did not directly participate in illegal activities, nonetheless knew they would benefit from the illegal and unethical activities alleged herein. Defendants possessed an ongoing duty, which mirrored Plaintiffs duty to continue to make payments per the mortgage contract, to disclose to Plaintiffs predatory and/or unethical practices which might frustrate the purposes of the mortgage contract.

51.     Defendants may have assigned an ownership interest in the Deed of Trust/Promissory Note generated as the result of the subject mortgage to MERS, resulting in none of the Defendants being able to establish being a party who can prove that they are a legitimate holder in due course.

52.     Defendants and their brokers and agents provided loans to customers who were known to lack the income/assets to provide complete, timely monthly payments. Defendants provided loans, the repayment of which necessitated allocation of an inordinately high percentage of borrowers income. Borrowers were left with little income with which to pay other living expenses, Default and foreclosure therefore became highly likely.

53.     Defendants failed to perform adequate verification regarding borrowers' assets and incomes and instead utilized the "CLUES computer system — which facilitated underwriting decisions within minutes of submission of information. The failure to properly qualify borrowers resulted in many loans which should not have been made, as well as the provision of excessive monies to unqualified borrowers, i.e., borrowers received loans which were beyond their economic means to repay. This practice in turn resulted in defaults and foreclosures which eroded real estate values in Nevada and nationwide. The purposes of the contract Plaintiffs executed were thereby thwarted.

54.     Defendants and their brokers and agents engaged in a criminal conspiracy, i.e, MERS, Cal-Western, Stewart Title, First American National Default Title, Timothy M. Bartosh, William B. Naryka, and DOES 1 thru 25, and their brokers and agents acted in concert with various mortgage brokers and lenders, so as to encourage use of risky, unsound mortgage

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 22 -
COMPLAINT

products, and thereby maximize short-term profits. The members of MERS, named herein, participated in or ratified the conspiracy.

## FIRST CAUSE OF ACTION
### (Violation of Unfair Lending Practices, N.R.S. 598D.100)

55.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

56.    On or about June 2007, CTX was the lender involved in the above described property for an initial loans [as to be noted herein it is the creation of two separate notes date the same time that creates one of the elements of the predatory lending scheme and fraud]. Timothy M. Bartosh and William B. Naryka were the original trustees involved in the above described property for the initial loans that were predatory in nature, when granted, as more particularly described in the specific cause of action.  MERS was the named beneficiary under the deed of trust.  Stewart Title caused the deed of trust to be recorded in Churchill County.

57.    Cal-Western, now claims to be "the duly appointed Substituted Trustee or acting as Agent for the Beneficiary; and Stewart Title requested the recording of the deed of trust and notice of default, and is representing that they are the Agent for Cal-Western, as Agent for Chase and Fannie Mae.  Cal-Western, is the entity Plaintiffs was informed to contact to arrange payments to stop the foreclosure, and is believed to hold some interest in the property, note or deed of trust, but Plaintiffs have located no recording documents establishing their standing.[19]

58.    MERS is integrally involved in a system which shares information among lending corporations. These Defendants are believed to have acted in concert with all Defendants and the other Defendants herein named or to be named, so as to engage in predatory and unfair

---

[19] NRS 247.200 requires all instruments effecting real property be recorded.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

tending practices including without limitation the intentional transfer of rights as purported beneficiary under void Deeds of Trust for the purpose and with the intent of facilitating wrongful and unlawful foreclosures on the Plaintiffs. The "boilerplate" Note, provided by Defendants, including among other things a waiver of "Presentment and Notice of Dishonor" which would prevent Plaintiffs from being able to determine who holds the Note. Though at the inception of the loans, the lenders and participants in closing the loans have promised and guaranteed that Plaintiffs could refinance and/or modify the loan before any increase in payment would be in effect. Plaintiffs made several attempts to modify their loan but was not given direct contact with the holder of the note, but dealt with believed servicers.

59.     CTX utilized guidelines in the "intake" information and/or underwriting department that would qualify Plaintiffs for a Home Purchase Loan, but said evaluation was contrary to those set forth in the Unfair Lending Practices Act under NRS § 598D.100 (2003). Defendants loaned funds wherein they knew or should have known that the loan made to Plaintiffs was based upon stated income with no verification of the Plaintiffs' ability to repay the loans in violation of NRS § 598D.100 (2003). More specifically, Defendants, knowingly or intentionally made, or participated in the making of a home loan to Plaintiffs, based solely upon the equity of the borrower in the home property and without determining that Plaintiffs had the ability to repay the home loan from other assets, including, without limitation, income.

60.     Defendants' actions complained of herein constitute unfair lending practices violating the protections guaranteed under NRS § 598D.100 which entitles Plaintiffs to treble damages as provided by statute.

## SECOND CAUSE OF ACTION
### (Conspiracy to Commit Fraud and Conversion)

61.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 24 -
COMPLAINT

62.     Defendants and their brokers and agents, and the Co-conspirator Defendants named herein, referred to below as Lenders, Securitizers, and/or Servicers conspired to defraud Plaintiffs claiming they were approved for loans which if they used traditional lending practices, and not equity based loan Plaintiffs would not have qualified. Additionally Defendants by participating in the MERS system perpetuated the fraud.[20]

63.     As noted above, Defendants that were involved with each loan formed an association to conspire to deprive Plaintiffs of their property through fraud and misrepresentation that would result in Plaintiffs entering into loan agreements for which they were ultimately not qualified and which would eventually result in Plaintiffs' inability to make payments and stay in their homes, losing substantial down payments, and years of interest payments.

64.     Upon information end belief, in furtherance of the conspiracy, as agent or employee (acting within or outside his scope of emplacement), as unauthorized Trustee and as servicer, acting in concert and for the benefit of each to acquire fees or income intended that the Plaintiffs loans would be packaged with other loans and sold on the secondary market, resulting in a profit to Defendants.

65.     Defendants, CTX, their successors in interest and each of them knew prior to their origination of the loans or acceptance of the loans for servicing and subsequent transfer of the loans that Plaintiffs were not qualified to make the payments under the loan. However, Defendants and their successors in interest knew or should have known that Plaintiffs would rely, and did rely, upon Defendants and successors in interests' representations, or the representations of Defendants' employees or representatives, related to Plaintiffs' ability to

---

[20] The elements of common law fraud arc "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation and (6) the party thereby suffered injury." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007)

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

repay the loan or to refinance the loan by Defendants intended to reap substantial profits from the initial execution of the mortgage loan without any consideration of the long-term viability of the contractual agreement.

66.    Defendants acted in a concerted manner to target Plaintiffs as borrowers, to misrepresent the loan terms and to misrepresent Plaintiffs' qualification for the loan, in order to reap additional profits. As a result of Defendants conspiracy described herein, Plaintiffs have suffered injuries which include mental anguish, emotional distress, embarrassment, humiliation, loss of reputation and a decreased credit rating which has impaired Plaintiffs' ability to obtain credit at a favorable rate, the loss or anticipated loss of their homes and other financial losses according to proof, including attorneys' fees and costs incurred in this matter, in excess of $10,000.00.

67.    Defendants willfully and wantonly conspired to deceive Plaintiffs into taking the loans alleged herein, justifying' an award of punitive damages, in excess of $10,000.00.

## THIRD CAUSE OF ACTION
### (Permanent Injunction)[21]

68.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

69.    Defendants have consummated a non-judicial foreclosure sale on the Property without authority in that deed of trust had been severed from the deed of trust as discussed above.  Plus, assuming the deed of trust was not severed, the notice of default and notice of sale were defective for the reasons discussed above.

---

[21] A Declaratory Judgment may, under appropriate circumstances, be coupled with injunctive relief. N.R.S. 31.010, 31.030, subd. 1, 31.040, 31.180. Aronoff v. Katieman, 345 P.2d 221, 75 Nev. 424 (1959).

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

70.     Fannie Mae has served Plaintiffs with a three-day notice to quit and, thus, have began an unlawful detainer action to remove them from their Property.

71.     Plaintiffs received a "Notice of Default" executed by Cal-Western as agent for Chase.

72.     To the knowledge of the Plaintiffs, Cal-Western was never properly substituted as trustee prior to these documents being filed and recorded establishing that they were not proper parties under NRS 107.080 to initiate a non-judicial foreclosure. And should the sale be allowed Plaintiffs will demand a rescission under NRS 645F.440.

73.     Plaintiffs are being irreparably harmed because title of their Property has been wrongfully taken from them and Fannie Mae is attempting to have them removed from their Property.

74.     Defendants caused a Deed of Trust to be executed and recorded which identified MERS as the beneficiary/nominee of the subject properties. The alleged language indicates that: "MERS is acting solely as a nominee for Lender and Lenders successors and assigns and MERS is the beneficiary under this Security (Deed of Trust) Instrument." The Deed of Trust misrepresents the true party in interest and holder of the "original Note".

75.     At the time Plaintiffs signed the Deed of Trust, at the dates noted above, they were without knowledge MERS previously declared to Defendants that MERS would never hold a beneficial interest in any Deed of Trust, including Plaintiffs' note.

76.     All of the defendants, their brokers and agents, successors in interest or some of them, knew, and should have known, prior to the presentation of the subject Deed of Trust, that MERS' policy was to refrain from holding a beneficial interest in either the subject Deed of Trust or property. Defendants knew MERS' declaration to this effect was part and parcel of a conspiracy to violate public policy and the law.

77.     Notwithstanding knowledge of MERS' deceptive and predatory business practices and declaration, Defendant used false and misleading misrepresentations to Plaintiffs, and failed to inform Plaintiffs of MERS's declaration; the predatory and deceptive schemes orchestrated by

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 27 -
COMPLAINT

MERS and participated in by MERS; and of Defendants' relationship to MERS. Defendants thereby intended to cause Plaintiffs to rely upon their implied and direct misrepresentations and omissions.

78.    Plaintiffs relied upon Defendants' misrepresentations and remained uninformed of the operative and material facts as to the identity of MERS and MERS' relationship with Defendants. Defendants were unaware of MERS' declaration, and the conspiracy of which Defendants, including MERS, created and participated in. Plaintiffs manifested this reliance by executing the Deed of Trust, as well as other documents attendant to the mortgage contract.

79.    The subject Deed of Trust is null and void and bereft of legal effect.   MERS has no standing or authority to designate a substitute or successor beneficiary, or substitute a successor trustee — or to take any other action relative to any purported beneficiary. The Deed of Trust was fraudulently obtained; is the product of an actionable conspiracy; is evidence of racketeering; and creates an estoppel.

80.    Defendants intentionally deceived Plaintiffs by creating a sham beneficiary pursuant to the Deed of Trust. Defendants designated MERS as the beneficiary to render difficult or impossible the identification of the actual owner or beneficial interest holder of the Deed of Trust, until such time as Defendants, chose to designate the owner or beneficial interest holder pursuant to a predatory foreclosure. Defendants designated sham beneficiary to facilitate a wrongful disclosure. By maintaining the fiction, MERS is a properly designated beneficiary, Defendants violated NRS § 205.372 and NRS 207.470.

81.    Defendants perpetrated a calculated scheme to defraud Plaintiffs and to deny Plaintiffs and other Nevadans access to Nevada Courts.  Defendants knew of the illegality of their predatory lending schemes and, pursuant to the designation utilized a sham beneficiary as a procedural roadblock to forestall an adjudication of the merits.

82.    As a direct and proximate result, Plaintiffs have been harmed as described herein. Plaintiffs have repudiated the mortgage contract via lawsuit. Plaintiffs contend that the contract

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 28 -
COMPLAINT

1

2  is null and void pursuant to the legal principles stated herein, including estoppel, and pursuant

3  to offset. That is, the amount of damages owed to Plaintiffs, upon being trebled pursuant to

4  Nevada's anti-racketeering statute and the Unfair Lending Practices Act, exceeds the face value

5  of the Promissory Note.

6  83.   Plaintiffs have suffered emotional trauma and will be irreparably harmed if Defendants

7  are allowed to exploit a Deed of Trust which was fraudulently obtained so as to deny Plaintiffs

8  their homes via wrongful foreclosure, and actual damages for funds paid in excess of

9  $10,000.00.

10  84.   As a result of Defendants' actions it has become necessary for Plaintiffs to retain the

11  services of an attorney to prosecute the claims herein, and Plaintiffs are entitled to all costs and

12  attorneys' fees incurred, including any interest thereon.

13  85.   Plaintiffs desires a judicial determination as to the respective rights and obligations of

14  Plaintiffs and Defendants in connection with the mater herein alleged and a judgment in favor

15  of Plaintiffs as to any obligation owed by Defendants to Plaintiffs herein.

16

17                                    ////

18

19                                    ////

20

21                                    ////

22

23                                    ////

24

25

26

27

28

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 29 -
COMPLAINT

FOURTH CAUSE OF ACTION
(Declaratory Relief)[22]

86.   Plaintiffs repeat and re-allege each and every allegation contained in the preceding

paragraphs and incorporates the same as though fully set forth herein.

87.   As alleged in Plaintiffs claim regarding Defendants' violations of the State laws,

Defendants have violated Plaintiffs' rights under State law.

88.   Defendants have proceeded with foreclosures against Plaintiffs for which they have no

lawful right to foreclose and deprive Plaintiffs of their Property.

89.   Plaintiffs seek a declaratory judgment against Defendants stating that Defendants have

violated Plaintiffs' rights under State laws as alleged herein.

90.   Plaintiffs have been required to retain counsel in this matter to protect Plaintiffs' rights

and have incurred attorneys' fees and costs in this matter.

---

[22] NRS 31.010-30.160. The Uniform Declaratory Judgment Act opens the door to djudication of innumerable complaints and controversies not theretofore capable of judicial relief and permits the courts to vindicate challenged rights, clarify and stabilize unsettled legal relations, and remove legal clouds which create insecurity and fear. St. 1929, c. 22, § 1 et. seq. Kresa v. Corey, 189 P.2d 352, 65 Nev. 1 (1948).
A Declaratory Judgment may, under appropriate circumstances, be coupled with injunctive relief. N.R.S. 31.010, 31.030, subd. 1, 31.040, 31.180. Aronoff v. Katieman, 345 P.2d 221, 75 Nev. 424 (1959). A declaratory judgment may be brought to determine an actual controversy. Pittenger v. Home Sav. and Loan Assn. of Los Angeles, 166 C.A.2d 32, 332 P.2d 399 (2d Dist. 1958); Green v. Cox. 44 Or.App. 183, 605 P.2d 1198 (1980), regarding the validity of a mortgage or trust deed, Cal.—R.G. Hamilton Corp. v. Corum, 218 Cal. 92, 21 P.2d 413 (1933);. Fla.— Rice v. Fremow, 165 So.2d 447 (Fla. Dist. Ct. App.2d 1964) or the rights, duties, and liabilities of the parties, U.S.—Manchester Gardens. Inc. v. Great West Live Assur. Co., 205 F.2d 872 (D.C. Cir. 1953); U.S. v. Park Side Court, Inc., 257 F.Supp. 177 (D.N.J. 1966), judgment aff'd, 376 F.2d 853 (3d Cir. 1987), Lomanto v. Bank of America, 22 Cal.App.3d 663, 99 Cal.Rptr. 442 (4th Dist. 1972). Including those of a trustee. Black v. Elkhorn Coal Corp., 233 Ky. 588, 26 S.W.2d 481 (1930). Declaratory relief is also appropriate to determine priorities between mortgages. Grambo v. South Side Bank & Trust Co., 141 Pa.Super. 76, 14 A.2d 925 (1940); Bank of Agusta v. Satcher Motor Co., 249 S.C. 53. 152 S.E2d 676 (1967); and the validity of a sale made by a trustee. Holland v. Pendleton Mortg. Co., 61 Cal.App.2d 570, 143 P.2d 493 (2d Dist. 1943).

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 30 -
COMPLAINT

FIFTH CLAIM FOR RELIEF
(Wrongful Foreclosure)

91.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

92.    Defendants have assigned Note and/or Deed of Trust to entities with which Plaintiffs do not have any agreement and/or were never disclosed to Plaintiffs.

93.    Defendants assigned Plaintiffs' Note to investors by way of a mortgage backed securities wherein a co-mingling of the Notes occurred. Defendants transferred the Deed of Trust to the mortgage backed security and no interest in the Note or Deed of Trust was retained by the lender or by the beneficiary.

94.    The purported authority of the notice of default and notice of sales were recorded and executed by Cal-Western (claiming to be either the original trustee, duly appointed substituted trustee, or acting as agent for the trustee") as agent for CTX, Chase and Fannie Mae.  Plaintiffs did not have to recognize the wrongful notice in that such an entity in violation of NRS 247.200 failed to record any evidence of appointment as a beneficiary, successor beneficiary, or trustee or substitute trustee, the only entities entitled to give statutory notice under Non-Judicial Foreclosure Statute NRS 107.080 et. seq.

95.    Defendants have declared default on an obligation over which they have no rights. Under information and belief, as will be established upon completion of discovery, Plaintiffs obligation were discharged when the investors in the mortgage backed securities claims were paid as a result of over collateralization of the obligation and/or credit default swaps and/or federal bailout funds and other monies paid to the investors who owned the Notes and obligation and/or to the Defendants or bank holding companies who disbursed the monies in such fashion ass to extinguish the obligation of Plaintiffs to repay the monies they borrowed which are at issue herein.

96.    Neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the borrower(s) or was a beneficiary under the Deeds of Trust

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

ever declared a default of the Notes executed by Plaintiffs. No beneficiary under the Deed of Trust ever declared a default under the Note and Deed of Trust. No beneficiary under the Deed of Trust ever directed a sale of any of the properties owned by Plaintiffs in which MERS is named as beneficiary or nominee of the beneficiary/lender.

97.    The servicers of the Notes have no contract with the Plaintiffs no investment in the mortgage back securities, and no right to declare a default on the note. The allegation by the loan servicers in the notices of Default and election to sell Plaintiffs' property that "the beneficiary has declared a Default and directed that the property be sold" is not true. The Defendant servicers who made that false representation knew at the time each and every sue notice was executed, mailed and recorded that those allegations were false.

98.    Any foreclosure action against Plaintiffs property must commence with a written declaration of Default and direction to the trustee to sell the property. The written notice must be made by the entity to which the obligation is owed.

99.    After the debts on the Notes were discharged to the investors, the assignments of the Deeds of Trust and Notes, the subsequent notices and substitutions of trustee and beneficiaries were nullities and transferred nothing to the entities now seeking to foreclose on the Plaintiffs' property or claiming to own the Plaintiffs property as bank REO's.

100.    No person or entity with any legal right to declare a default or direct a sale of Plaintiffs' Note or Deeds of Trust have taken any such action.

101.    As a direct and proximate result of the unlawful and wrongful commencement and advancement of foreclosure proceedings by Defendants, the Plaintiffs have suffered economic damages, severe and disabling psychological and physical pain and suffering, humiliation, embarrassment, damage to credit and other damages as alleged herein.

102.    Plaintiffs have been required to retain counsel and expend costs to prosecute this claim for relief.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 32 -
COMPLAINT

## SIXTH CAUSE OF ACTION
### (Fraud through Omission)

103.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

104.    101.    The corporate Defendants, in 2075, and individual Defendants as agent or employees (acting within or outside her scope of emplacement), Defendants as servicer, as noted above their executives and employees committed fraud by failing to disclose to Plaintiffs the predatory, unethical and unsound lending and foreclosure practices, and bonuses and inflated salaries paid pursuant thereto. Defendants, failed to disclose predatory, unethical and unsound lending practices of other major lenders, of which Defendants were aware per the MERS system, and other means. Defendants were possessed of a duty to make such disclosures. The facts which Defendants failed to disclose were material to the mortgage contract, and to Plaintiffs informed right to rescind. Defendant, including Doe Defendant knew, and should have known, if these facts had been disclosed, Plaintiffs would not have executed the subject mortgage contract and would have ceased to rely upon Defendants' integrity and good faith. Plaintiffs, had they been fully and timely informed, would have rescinded. Defendants assiduously cultivated reliance upon their alleged integrity and good faith through years of advertising — which falsely portrayed Defendants as a bastion of honesty and as possessing high-minded motives to assist American home-buyers.

105.    Plaintiffs relied upon Defendants' representations and upon Defendants' failure to advise of ongoing predatory unethical and unsound business practices which Defendant knew were possessed of the potential to severely damage the real estate market in Northern Nevada Plaintiffs reasonably relied upon the express representation of Defendants.

106.    As a direct and proximate result, Plaintiffs was damaged. That is, the value of real estate Plaintiffs obtained pursuant to the subject mortgage transaction has markedly diminished. Plaintiffs suffered emotional distress, anxiety and loss of enjoyment of life.  Plaintiffs' equity, obtained via a sizeable down payment, has been dissipated as a direct and proximate result of

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 33 -
COMPLAINT

1

2   Defendant's predatory, illegal and unsound lending and foreclosure practices for which

3   Plaintiffs is entitled to exemplary and punitive damages, according to the proof submitted to the

4   fact finder, both being in excess of $10,000.00.

5

6                              SEVENTH CAUSE OF ACTION
                                      (Quiet Title)

7   107.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding

8   paragraphs and incorporates the same as though fully set forth herein.

9   108.    105.    The Title to Plaintiffs property is clouded. Defendants have wrongfully utilized

10  Nevada's non-judicial foreclosure statutes to foreclose on Plaintiffs' Property and are now

11  trying to evict them through an unlawful detainer action. Defendants' acted without authority in

12  that the notice of default and notice of sales recorded by Cal-Western were not subject to valid

13  deed of trust nor was Cal-Western properly substituted in as a successor trustee. Plaintiffs

14  received a "Notice of Default" executed by Cal-Western as attorney in fact for Chase as the

15  alleged current beneficiary. To the knowledge of the Plaintiffs, Cal-Western, was never

16  substituted as trustee prior to these documents being filed and recorded, establishing that they

17  were not proper parties under NRS 107.080 to initiate a non-judicial foreclosure. And should

18  the sale be allowed Plaintiffs will demand a rescission under NRS 645F.440. Each and every

19  document being invalid is a "cloud" on the title and should not establish any right title or

20  interest to the property.

21  109.    Plaintiffs recorded a "Lis Pendens" with the Churchills County Recorder, pursuant to

22  Chapter 40 to place, on notice anyone who may unknowingly purchase the home at a sale

23  subsequent to the unlawful non-judicial foreclosure sale. Plaintiffs thereby clearly encumbered

24  the Property so as to provide Defendants, and others, with formal notice as to the defective

25  character Defendants' claims.

26

27

28

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 34 -
COMPLAINT

110.   Plaintiffs, above named, own in fee simple, possess and are entitled to possess the Property described herein together with the exclusive right at all times to enter upon or in said land to prospect for and to drill, bore, recover and remove the same, described as follows:

3060 York Lane, Fallon, NV 89406

The land referred to herein is situated it, the State of Nevada, County of Churchill:

**LOT 25 AND THE WEST 5' OF LOT 26 OF THE MARVEL VISTA ACRES SUBDIVISION, ACCORDING TO THE MAP THEREOF ON FILE IN THE OFFICE OF THE COUNTY RECORDER OF CHURCHILL COUNTY, NEVADA, AS FILE NO. 88143**

P.I.N: 10-101-03

111.   Plaintiffs need not TENDER any funds regarding the note in order to foreclose, in that under information and belief, the note has been severed from the Deed of Trust making the note unsecured and the Deed of Trust a "cloud on the title" of Plaintiffs.  Thus without providing any supporting documentation, Defendants claim and assert an interest or interests in the property adverse to Plaintiffs.  The claims of said Defendants are without any right whatsoever and Defendants have not, nor have any of them, any estate, right, title or interest whatsoever in said land or premises or any part thereof.

112.   As a direct result of Defendants' contractual breach of the duty of good faith and fair dealing Plaintiffs has been harmed as described herein.

EIGHTH CAUSE OF ACTION

(Tortuous Breach of the Implied Duty of Good Faith and Fair Dealing)

113.   Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

114.   Defendants, and their brokers and agents, successors in interest, breached the implied duty of good faith and fair dealing attendant to the subject mortgage contract in a tortuous

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 35 -
COMPLAINT

manner. Defendants and successors in interest, by virtue of the trust reposed by Plaintiffs, are liable in tort.

115.    As a direct and proximate result Plaintiffs has been harmed as described herein, but in excess of $10,000.00.

## NINTH CAUSE OF ACTION

### (Civil Conspiracy)

116.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

117.    Defendants, and their brokers and agents, successors in interest, entered into a conspiracy. The acts and participation in the transaction at the commencement and in furtherance, knowing the transaction was based upon fraud and deceit. This conspiracy has been ratified, and participated in by Defendants. Defendants and successors in interest continue to eject Nevadans from their homes notwithstanding knowledge of their own illegal conduct and unclean hands, and without making legally required disclosures to those being evicted

118.    As noted in the conduct alleged, Defendants formed and operated a conspiracy and damages resulted to Plaintiffs from Defendants' acts done in furtherance of the common design. Furthermore, each participant in such wrongful action is responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.

119.    As a direct and proximate result Plaintiffs has been harmed as described herein, but in excess of $10,000.00.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TENTH CAUSE OF ACTION

### (Racketeering – NRS 207.470)

120.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

121.    The note and deed of trust which Defendants, in concert with the other corporate defendants, executed with the Plaintiffs was one of many executed in Northern Nevada in 2003 and thereafter.  Defendants engaged in racketeering, as prohibited by Chapter 207 of the Nevada revised statutes via the predatory and abusive lending practices described herein, and the repeated failure to disclose such – both relative to Plaintiffs and others.  The co-defendants acting in concern to violate NRS 205.372 and if the home is sold at a non-judicial sale, there would be a violation of NRS 645F.440 and 430 in that the sale involved fraud and deceit.

122.    As a direct and proximate result of Defendants' racketeering, Plaintiffs were harmed as alleged herein.  Plaintiffs are entitled, pursuant to Chapter 207, to treble damages, attorneys fees, to an order quieting title, and to other related relief.

## ELEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

123.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

124.    Defendants have received years of monthly note payments under the terms of the Note executed by Plaintiffs;  They have received TARP from the federal government;  They were paid the balance of the note by utilizing their credit default swap;  They received one third of the value of the loan via Plaintiffs' mortgage insurance;  They received money from the FDIC; and, as is contrary to the purpose of Nevada's non-judicial statues, they have unlawfully taken title to Plaintiffs' Property.

125.    Defendants induced Plaintiffs into executing the mortgage loan documents by making misrepresentations regarding Plaintiffs' ability to pay for the mortgage and the value of Plaintiffs' residence.

126.    Defendants have been unjustly enriched by receiving payments on the risky, volatile mortgage loan which was designed to reap inordinate profits for Defendants and to ultimately fail.

127.    As a direct and proximate result Plaintiffs has been harmed as described herein, but in excess of $10,000.00.

## TWELFTH CLAIM FOR RELIEF

### (Fraud in the Inducement)

128.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

129.    Defendants, in each of the separate transactions failed to disclose the material terms of the loans and incidental services to Plaintiffs, and others similarly situated, by, inter alia, failing to explain the fact that Plaintiffs and others similarly situated were not qualified to enter into the loans on the terms stated and failed to advise the Plaintiffs of the fact that Defendants had no lawful right to foreclose upon the home of the Plaintiffs.

130.    Defendants concealed the true terms of the loans, and the risks of the transactions, including, but not limited to, negative amatorization, prepayment penalty provisions, the risk of default and the risk of foreclosure from Plaintiffs, and failed to advise Plaintiffs that the Defendant, had no lawful right to foreclose upon his home.

131.    Defendants severely misrepresented the ability of Plaintiffs to qualify for the loans.

132.    Defendants knew or should have known that had the truth been disclosed, Plaintiffs would not have entered into the loans.  Defendants induced Plaintiffs to rely upon these representations and failed to disclose.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 38 -
COMPLAINT

133.    But for the failure to disclose the true and material terms of the transactions that began the loans and the failure to disclose that the Defendants had no right to foreclose upon the home of the Plaintiffs, that Plaintiffs would lose their Property, Plaintiffs could have read the agreement and additional documents and would have been alerted to issues of concern.

134.    Defendants' misrepresentations caused the Plaintiffs damages, pain and suffering, mental anguish and Plaintiffs was required to retain legal counsel to prosecute these claims.

## THIRTEENTH CAUSE OF ACTION

### (Extinguishment of Liens)

135.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs and incorporates the same as though fully set forth herein.

136.    Nevada law provides that parties may secure performance of an obligation or payment of a debt by utilizing a deed of trust.  See NRS 107.020.  A deed of trust involves three parties: the trustor, the trustee, and the beneficiary.  The trustor is the debtor owning the property that is conveyed to the trustee as security of the obligation owed to the beneficiary.  See *Miller & Starr, California Real Estate 3D*, § 10:3 (Three Parties to a Deed of Trust)(2003).  The beneficiary of a deed of trust is the person/entity who is the holder of the debt secured by the lien. *Monterey S. Partnership v. W. L. Bangham, Inc.*, 49 Cal.3d 454, 461, 261 Cal.Rptr. 587. The payee under a promissory note is the beneficiary under a deed of trust.  A deed of trust can only be foreclosed by the owner of the promissory note that is secured by the deed of trust. *Santens v. Los Angeles Finance Co.*, 91 Cal.App.2d 197, 202  (Cal.App.4.Dist.1949).

137.    A deed of trust must secure some debt or obligation.  The lien does not attach prior to the creation of the underlying debt or obligation.  The security instrument is merely incident to and measured by the performance of the obligation, there can be no lien of a mortgage or trust deed without an underlying and enforceable debt or obligation. *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1235 (1995).  An assignment of the trust deed without a transfer of the obligation (the promissory note) is completely ineffective. *Kelley v Upshaw*, 39 Cal.2d 179,

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 39 -
COMPLAINT

192 (1952). See also *Adler v. Newell*, 109 Cal. 42, 46-49 (1885), holding that an assignment of the mortgage did not carry the debt.

138.    This has long been the law in throughout the United States: when a note secured by a mortgage is transferred, "transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." *Carpenter v Longan*, 83 U.S. 271, 275 (1872). Clearly, the objective of this principle is "to keep the obligation and the mortgage in the same hands unless the parties wish to separate them." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 (1997). The principle is justified, in turn, by reasoning that the "the debt is the principal thing and the mortgage an accessory." *Id.* Given that "the debt is the principal thing and the mortgage an accessory," the Supreme Court reasoned that, as a corollary, "[t]he mortgage can have no separate existence." *Carpenter*, 83 U.S. at 274. For this reason, "an assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Id.* at 274. While the note is "essential," the mortgage is only "an incident" to the note. *Id.* "Where the holder of a note has 'transferred' only the deed of trust, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).

139.    When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. *See* RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997).

140.    The two (2) deeds of trusts designate MERS as the beneficiary.   MERS has no right to payment from the Plaintiffs.

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 40 -
COMPLAINT

141.    The deed of trust was recorded on June, 2007, in the Recorder's Office for Churchill County.

142.    A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment ... or to receive something as a result of a legal arrangement or instrument." Blacks Law Dictionary 165 (8th Ed. 2004).

143.    Because each deed of trust has designated MERS as the beneficiary and because the deeds of trust at issue does not secure any debt enforceable by MERS, each deed of trust is invalid. Each deed of trust has been invalid since their creation.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendants and request the following relief:

A. For a Temporary and/or Permanent Restraining Order and/or a Preliminary Injunction enjoining Defendants from enforcing the mortgage contract and/or setting aside the foreclosure sale and pursuing the unlawful detainer action; canceling the subject Promissory Note; and directing Defendants to provide Plaintiffs with a clean and quiet title, and otherwise compelling Defendants to renounce any interest in the subject property;

B. For an award of compensatory damages, e.g.. reimbursement for the interest payments which Plaintiffs has made, and compensation for emotional damages; in excess of $10,000.00;

C. For awards of punitive damages in excess of $10,000.00;

D. For an award of treble damages pursuant to Nevada Revised Statute 207.470, e.g., and NRS 589D.100 et. seq., award of treble damages re: the amounts the subject property has diminished and actual loss;

E. For reimbursement of costs;

F. For reasonable attorney fees, including an award pursuant to Nevada Revised Statute 207.470; and NRS 589D.100, and

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

G. For an injunction directing Defendants to disclose to all mortgagors in Nevada complete and specific detail regarding their predatory, unethical and unsound lending, foreclosure and racketeering practices, and to advise Nevada mortgagors of their right to equitable relief, such as reformation, rescission, rights pursuant to Nevada's anti-racketeering statutes, and the right to seek damages from Defendants, their executives and employees.

H. For any further relief the Court deems proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## AFFIRMATION Pursuant to NRS 239B.030

The undersigned does hereby affirm that this document does not contain the social security number of any person.

DATED: This 1st day of October, 2010.

TORY M. PANKOPF LTD.

By:  /S/ TORY M. PANKOPF
TORY M. PANKOPF, ESQ.
#7477
611 Sierra Rose Drive
Reno, NV 89511
*Attorney for Plaintiffs,*
BRUCE and DEBBIE TAYLOR

Law Offices of
Tory M. Pankopf Ltd.
611 Sierra Rose Drive
Reno, NV 89511
(530) 725-8263

- 42 -
COMPLAINT